WALKER and CONNOR, JJ., dissenting.
From a judgment of nonsuit the plaintiff appealed.
On 16 April, 1868, Elisha J. Burk executed his will, devising all of his estate, real and personal, to his wife, Elizabeth, in fee, and died in 1889. Mrs. Burk remained in possession until 1904, when she died, devising the landed estate to Elisha Burk White, the namesake and near relative of her husband. A codicil was duly executed by the testator, Elisha Burk, on 19 February, 1889, three months before his death, reaffirming his will, in these words: "I am of the same opinion that I was when I wrote this will"; and also devising other lands and property to his wife in fee. On the trial the plaintiff offered the testimony of John Howell, that he heard a conversation concerning this land some six weeks after the execution of the codicil. The witness testified: "Mr. Burk did not come out but once after this conversation, and stayed about one-half hour. The conversation I heard was in his bedroom. Only he and Mrs. Burk were in the room when I went in. They were speaking about the lands named in the complaint, and it was about six weeks after the codicil was executed. I went in the room to hang up the keys, and they were engaged in conversation about the will, and I heard Mr. Burk say he was not satisfied with the will and wanted to write a new one. She asked him what he wanted to (572) *Page 418 
write a new will for. He said he wanted his nearest blood kin to have the property that was his father's. She asked him if he meant Rosa Thach, the plaintiff. He said `Yes.' She said: `Let it stay as it is, and I will make a will and will the property to Rosa.' He said: `If you will promise me to do that, I will let it stand as it is,' and she said she would. She said something about her objection to changing it being that Ben. Thach (father of Rosa) might get hold of it and worry her." To the introduction of this conversation the defendant in apt time objected, under Revisal, sec. 3118. Witness further stated that he was familiar with the land described in the complaint, and that it was the land he was talking about. Witness further said that testator said he did not care what Mrs. Burk did with the balance of the property. The court excluded this testimony, and plaintiff excepted.
After stating the facts: The purpose of the parol evidence is to fasten upon the devisee of Mrs. Burk a constructive or implied trust in this land. It is undoubtedly true that equity constructs and enforces such trusts by reason of acts or purposes of parties which are in violation of good faith. Therefore, within the scope of that doctrine, it is very generally held, in this country and in England, that when the testator has made a devise to a certain person, and, being about to alter that devise, such devisee induces the testator to abstain from making such alteration by a verbal agreement or by conduct leading the testator to believe that the devisee will use the property in the manner intended by the testator, equity will enforce the trust. This doctrine is (573) generally supported upon the theory that the trust does not act directly upon the will by modifying the gift, but that it acts upon the gift itself, after it has reached the possession of the legatee. It is contended that the written will has been given full effect, as required by the statute, by passing the absolute legacy, and that the equity to prevent fraud raises a trust in favor of those intended to be benefited, and compels the devisee or legatee, as a trustee ex maleficio, to turn over the gift to them. This doctrine of the courts of equity very generally prevails and is supported by eminent text writers. In fact, it at one time prevailed in this State. We need not examine the soundness of the reasoning in support of it, nor consider whether such doctrine does not give opportunity for more frauds than it serves to prevent.
Our statute (Revisal, sec. 3118), enacted in 1844, as construed and expounded by this Court, forbids the recognition of such doctrine any *Page 419 
longer in this State and the following of such precedents, even if our judgment approved them. This statute was evidently enacted in view of the decision of this Court, in 1843, in Cook v. Redman, 37 N.C. 623, in which a trust of this kind was upheld. It reads as follows: "No conveyance orother act made or done subsequently to the execution of a will of or relating to any real or personal estate therein comprised, except an act by which such will shall be duly revoked, shall prevent the operation of the will with respect to any estate or interest in such real or personal estate as the testator shall have power to dispose of by will at the time of his death."
This statute was construed in 1875 by an exceptionally able Court, and the opinion delivered by Chief Justice Pearson in a notable case, which has been since repeatedly cited and approved. Wood v. Cherry,73 N.C. 110, cited and approved in Avery v. Stewart, 136 N.C. 426;Sykes v. Boone, 132 N.C. 199; Cobb v. Edwards, 117 N.C. 245;Herring v. Sutton, 129 N.C. 107; Pitman v. Pitman, 107 N.C. (574) 159, and many other adjudications of this Court.
His Honor below based his ruling upon this leading case, and, as it was earnestly contended upon the argument that it has no controlling application here, we will notice it at length.
James C. Johnston, of Chowan County, owned a tract of land at Collins' Point, called his "Point Plantation." On 12 March, 1863, he executed to one Cherry a so-called lease, whereby he indicated his intention that the lessee should have the land for an indefinite period. This lease was ineffectual to convey any estate, as was afterwards determined by this Court. In April, 1863, James C. Johnston, by will duly executed, devised that property and all other lands in Chowan County to Edward Wood, and constituted him one of his executors. After executing his will, evidently fearing his so-called lease to Cherry was valueless, Mr. Johnston procured said Wood to write the following paper:
G. J. CHERRY, ESQ.
My DEAR SIR: — I address you this note to say to you that it is my desire that, after my death, you shall continue to occupy your present residence at my Point Plantation, retaining possession of the negroes now on the farm, named Jacob, George, and Maggie, during your natural life, fulfilling with my executor in Chowan County the same conditions and terms of rent as agreed upon and understood between you and myself heretofore. I further desire that, should you leave a wife at your death, she shall retain possession of said place during her widowhood and occupancy of, upon the same terms.
Very truly, your friend, JA. C. JOHNSTON. *Page 420 
It is to be noted that this paper was written by Edward Wood, the devisee and executor of Johnston, and presumably delivered by him to Cherry for Mr. Johnston. It is contended that the distinction between that case and the one at bar is that there was no promise upon (575) the part of Wood, the devisee, to give effect to the expressed wish of the testator, and, therefore, no trust could be implied. The answer to this argument is twofold:
First, an express promise is not essential. Wherever the doctrine contended for obtains, it is held that the trust will be implied from conduct leading the testator to believe that the legatee or devisee will use the property in the manner intended by the testator. Amherst College v.Ritch, 151 N.Y. 317, is a leading case, where the authorities are collected. This doctrine was held in this State prior to the statute of 1844, and has even been applied to wills executed prior to that time. It was then held that "in such case it is not necessary that a promise be made in express terms; silent assent to such a proposed undertaking will raise the trust." Cook v. Redman, supra; Thompson v. Newlin (1844), 38 N.C. 338. The wills in those cases were executed prior to the act of 1844. In view of such decisions, it can scarcely be doubted that, had the statute not been in the way, the Court would have fastened upon the devisee, Wood, an implied trust for Cherry's benefit. The conduct of Wood in writing the letter and silently acquiescing in it was ample assurance to Johnston that the former would respect and carry out his wishes.
Secondly, the Court so regarded it, and in plain language assumed in that case a promise upon the part of Wood, and decided the case upon that theory, and, nevertheless, held that implied trusts in the matter of devises are expressly excluded by the statute. To demonstrate it, we quote at length from the opinion of the Court: "The promise of Wood cannot be enforced on the ground of its creating a trust, for a trust can only be created in one of four modes: (1) By transmission of the legal estate, when a simple declaration will raise the use or trust. (2) A contract based upon valuable consideration, to stand seized to the use of or in trust for another. (3) A covenant to stand seized to the use of or in trust for another, upon good consideration. (4) When the court (576) by its decree converts a party into a trustee, on the ground of fraud. If we can sustain the defendant, it must be upon this point — that is to say, the fraud in writing the letter (referred to in the pleadings) at the dictation of the testator, and the promise to carry out his wishes in respect thereto, as understood between them; whereas the present action runs counter to the letter and violates the promise. This is met by the fact that the will had been executed several years before, and an implied trust is expressly excluded by statute. Bat. Rev. *Page 421 
ch. 119, sec. 44. `No conveyance or act done after the execution of a will shall affect its provisions, except it is so executed as to amount to a revocation.' The letter and the promise are both excluded by the words of this statute. The suggestion that the time of the execution of a will is the time it takes effect, to wit, the death of the testator, calls for no remark, but it is all that the idea of a trust can rest on; so that ground fails."
That the doctrine of implied and secret trusts, as applicable to devises prior to the act of 1844, should be recognized and followed by this Court in the cases we have quoted (one of which was tried by Judge Pearson
himself in the Superior Court), and then repudiated in Wood v. Cherry, as contrary to our statute, is conclusive to our minds that the Court intended to give effect to what it regarded as the manifest will of the General Assembly, and to prohibit entirely the attaching to devises of secret trusts by means of parol evidence, or any act of the testator not amounting in law to a revocation of the will. This decision construing a the statute of 1844 has stood unchallenged for a third of a century, and it has now become an established rule governing the transmission of property. It is one of those decisions which ought not now to be brought in question. "A former adjudication of this Court in construing a statute or the organic law should stand when it has been recognized for years, and in such case the principle settled other meaning given to the statute becomes a rule for guidance in making contracts, and also a rule of property." Walker, J., in Hill v. R. R., 143 N.C. (577) 541. It is suggested that statutes somewhat similar to ours have been construed differently in England and possibly some other jurisdictions. That may be true, but the wisdom of the judgment pronounced in Wood v.Cherry cannot be better exemplified than in its application to this case.
We have here a will made in 1868 and reaffirmed by a codicil executed three months before the testator's death, in 1889, devising this and other property to his wife in fee. The codicil indicates that he had been constantly of the same disposing mind for eleven years, and there is nothing in the record indicating any reason why the testator should have changed his mind three weeks after its execution. That he made a most natural disposition of his property no one will deny. The entire testimony relied upon to establish the trust was received by the court and then excluded, and is sent up in full in the record. The testimony of Howell has been set out fully in this opinion. He undertakes to testify to a conversation which he says he heard between Elisha Burk and his wife eighteen years ago. This alleged conversation the witness mentioned to no one during Mrs. Burk's lifetime, and only after her death, in 1904, he thought to mention it to plaintiff's husband. How many of us are willing to narrate *Page 422 
with any sort of accuracy a conversation between others heard casually eighteen years ago, and what reliance is there to be placed upon such evidence? The only other evidence offered are some alleged declarations of Mrs. Burk testified to by plaintiff's husband and father, witnesses necessarily deeply interested in plaintiff's recovery, and whose testimony must be taken with some grains of allowance. The evidence of these witnesses may be true. We do not mean to intimate that it is not. But it must occur to any one that such evidence is easy to manufacture and extremely hard to controvert after the lapse (578) of years, when the testator and devisee have passed away. It seems to us in line with a sound public policy and conducive to the stability of written testaments that the provisions of a will made in 1868 with all the formalities of law, and reaffirmed with equal solemnity in 1889, three months before the testator's death, should not be subjected to the possibility of change upon the mere recollection of witnesses, however upright.
We think the construction of the statute made in Wood v. Cherry, gives much needed security to titles, and if we felt at liberty to disturb it we should hesitate long before doing so.
No error.
WALKER and CONNOR, JJ., dissenting.
Cited: Newkirk v. Stevens, 152 N.C. 502.