The facts are stated in the opinion of the Court.
This action was brought by the plaintiff against the defendant to recover what he alleges to be his share of the proceeds of the sale of certain timber upon the lands described in the complaint. The plaintiff, Swan Hill Newkirk, owned a life estate in the land, and the remaindermen brought a suit against him to declare the said estate forfeited by reason of waste alleged to have been committed by the said Newkirk. The case was tried, and Newkirk, in 1903, recovered a judgment, in which the jury found, and the court declared, that the estate had not been forfeited, and further adjudged that the plaintiffs pay the costs of the action. The plaintiff in this action alleges that he employed the law firm of Stevens, Beasley 
Weeks, who are the defendants in this action, to appear for him in the suit brought by the remaindermen, to which we have already referred, and that he and the defendants entered into a written agreement, by which the defendants were to receive one-half of the land recovered by him in the action, and if he was cast in the suit, that they would not receive anything for their services as attorneys. The execution of this contract was admitted by the defendants. The plaintiff further alleged that in 1906, while the defendants were still his attorneys, he executed to the defendant Stevens a deed for his interest in the said timber, for a stated consideration of $800, but that no consideration actually passed to the plaintiff, and that the said deed was made upon an agreement between the plaintiff and the said Stevens and one Henry E. Shaw, who represented his wife, Virginia D. Shaw, in the said transaction, that the *Page 478 
timber should be sold, and each of the parties, that is, the defendant, H. L. Stevens, and Virginia D. Shaw, should receive one-third of the proceeds of sale. The plaintiff further alleges that the said Stevens and Shaw, at the time the deed was executed by the plaintiff to the said Stevens, had actually agreed to sell the timber to Caldwell Hardy, who was acting as trustee for the Carolina Timber Company, for the sum of $6,000, and that they fraudulently concealed the fact from him and represented that the land would be sold for $2,400, and by the agreement between them, that he would receive, as his share of the proceeds, the sum of $800.
The defendants in their answer deny the allegations of the complaint and the fraudulent representation and concealment, and averred the truth to be that the plaintiff, prior to the execution of the deed to Stevens for the recited consideration of $800, had agreed to sell (500) his interest in the timber to Henry E. Shaw, acting in behalf of his wife, Virginia D. Shaw, who then owned an interest in the land, and that the deed was made to H. L. Stevens, with the express understanding and agreement that he would convey the land to H. E. Shaw, or his wife, when the purchase money should be paid by the latter, that is, the sum of $800. That no offer of $6,000 for timber on the land had been made by any one until after the plaintiff executed the deed to Stevens for the consideration of $800, on 12 February, 1906, and that the timber was purchased after that time by Caldwell Hardy, as agent for the Carolina Timber Company, and that there was no agreement as to the division of the proceeds of sale and no fraudulent representation by the defendant H. L. Stevens, or H. E. Shaw. That the deed was executed by the plaintiff to be defendant H. L. Stevens in order that he might hold the legal title until the purchase money was paid by H. E. Shaw, as the plaintiff was unwilling to make the title directly to H. E. Shaw, as agent of his wife, until the purchase money had been paid.
The plaintiff tendered certain issues, nine in all, which the court refused to submit to the jury, and instead thereof submitted the following:
1. Did defendant H. L. Stevens agree with plaintiff to pay one-third of the amount for which the timber was sold? Answer: No.
2. Did H. E. Shaw agree with the plaintiff to pay him one-third of the amount for which the timber was sold? Answer: No.
3. Did the plaintiff sell his interest in the timber for $800 to H. E. Shaw? Answer: Yes.
4. If so, did plaintiff execute the deed to H. L. Stevens with instructions to convey the timber to said Shaw upon the payment of $800? Answer: Yes. *Page 479 
5. Did defendant H. L. Stevens fraudulently represent to the plaintiff that the purchase price of the timber was $2,400, and fraudulently conceal the fact that the purchase price of the timber was $6,000, and thereby induce the plaintiff to execute his deed for said timber?
The plaintiff objected to the submission of the third issue, because there was no written contract between plaintiff and H. E. Shaw, and there is nothing in the pleadings which raised such an issue. The jury answered the fifth issue, No, but erased the answer and returned a verdict only upon the first four issues, and the court thereupon instructed the jury that it was not necessary to answer the fifth issue, as the plaintiff did not allege in his complaint that the deed had been procured fraudulently, but he sued for the recovery of his (501) share of the proceeds of sale, which had been actually received by H. L. Stevens and H. E. Shaw from the Carolina Timber Company. The court ruled that there were only two allegations made by the plaintiff: 1. That the defendants had agreed to pay him one-third of the amount received from the sale of the timber. 2. That H. L. Stevens was his attorney, and that he held any amount that was received from the proceeds of sale for the plaintiff. The court held that the fifth issue was immaterial or irrelevant to the controversy, the jury having found that the plaintiff had sold the land to H. E. Shaw, acting in behalf of his wife, before the deed of 12 February, 1906, was executed to the defendant H. L. Stevens. The plaintiff duly excepted to the ruling of the court in regard to the fifth issue, and to the refusal of the court to submit the issues tendered by him.
We do not think the court committed any error in refusing to submit the issues tendered by the plaintiff. Several of them embraced facts which had been admitted by the parties, and the others were fully covered by the issues which the court afterwards submitted to the jury and which virtually disposed of the real matters in controversy between the parties. We think that the ruling of the court as to the fifth issue was correct, for the reason which we will hereafter state.
The first ground upon which the plaintiff rests his case, namely, that he is entitled to recover one-half of the proceeds of the sale of the land, which were received by H. L. Stevens, because the said Stevens was, at the time, his attorney, appears to us to be untenable. It must be true that the relation of attorney and client in a case like this one does not last forever. It ends at some time, and the time that the relation terminates in any particular case will depend upon the facts and circumstances and the nature of the employment or retainer. In the absence of special circumstances, "the employment of an attorney continues as long as the suit or business upon which he is engaged is pending, and ordinarily comes to an end with the completion of the special *Page 480 
task for which he was employed. At common law, the obtaining of a final judgment was such a termination of a suit as brought the relation to a close." 4 Cyc., 952.
In Treasurer v. McDonald, 1 Hill (S.C.), 184 (26 Am. Dec., 167), it was held that, "the authority of an attorney, when considered with a view to the duties he is required to perform, is confined to the conduct and management of his client's case, in which his skill and learning only are put in requisition, and the right to receive his client's money with special authority is an interpolation, the policy of which (502) may well be questioned, however convenient it may be in practice, and ought not to be extended." So in Dangerfield v. Thurston, 8 Martin, N. S. (La.), 119, it is held to be a general rule that authority of an attorney ceases with the termination of a suit. See, also,Mordecai v. Charleston, 8 S.C. 100; Hillegass v. Bender,78 Ind. 225; Berthold v. Fox, 21 Minn. 51; Jackson v.Bartlett, 8 Johnson (N. Y.), 281; Kellogg v. Gilbert, 10 Johnson, 221; Kamm v. Stark, 14 Fed. Cases, No. 7604.
In Branch v. Walker, 92 N.C. 90, this Court held that the relation of an attorney, with respect to the suit in which he is employed to prosecute or defend, "does not cease in any case until the judgment of the court, where it is pending, is consummated, that is, made permanently effectual for its purpose, as contemplated by law," citing Walton v. Sugg, 61 N.C. 98, andRogers v. McKenzie, 81 N.C. 164. In appears in the case at bar, that a judgment for the plaintiff was entered in the suit against him to forfeit his life estate for waste alleged to have been committed by him as early as 1903. This was a final judgment and fully established the title to the life estate in him, the defendant having paid the costs, and the judgment having been "consummated and made permanently effectual for its purpose, as contemplated by law," the relation of attorney and client was terminated in 1906. We may safely assert that, in 1906, when the deed was made to H. L. Stevens by the plaintiff, and three years after the judgment had been entered in the suit against the plaintiff in this action, there was no relation subsisting between the plaintiff and H. L. Stevens as his attorney in this action, which made it unconscionable for H. L. stevens to deal with the plaintiff in any transaction respecting the land, or which was calculated to give H. L. Stevens an undue influence or advantage over the plaintiff with respect to any such dealing. Besides, it appears by the verdict of the jury that the plaintiff had previously sold the land to H. E. Shaw, and the legal title was vested in Stevens for the purpose of securing the purchase money.
It is contended, though, that the agreement of the plaintiff to sell to H. E. Shaw not being in writing, was, for that reason, void, but this *Page 481 
contention is fully met by the case of Sykes v. Boone, 132 N.C. 199, and the authorities therein cited. That case has been approved by this Court several times since it was decided. Avery v. Stewart, 136 N.C. 441;Davis v. Kerr, 141 N.C. 11; Chappell v. White,146 N.C. 571; Gaylord v. Gaylord, 150 N.C. 222. We are of the opinion, therefore, that the testimony tending to show the sale by the plaintiff in this case to H. E. Shaw, for his wife, was properly (503) submitted to the jury for their consideration. It would seem, at least, to have been competent with respect to the allegation of the plaintiff that H. E. Shaw and the defendant H. L. Stevens had made a fraudulent representation to the plaintiff and had agreed to divide the proceeds of the sale of the land equally, when made.
The fifth issue, which related to the fraudulent representation of H. L. Stevens as to the amount which had actually been received for the timber or agreed to be paid, became immaterial when the jury found, by their verdict, not only that the plaintiff had sold his interest in the timber for $800 to H. E. Shaw, but that Stevens and Shaw had not agreed with him to divide the proceeds of the sale, as alleged in the complaint. Besides, the fifth issue was not presented by the pleadings, as it is not alleged that the deed to H. L. Stevens by the plaintiff was procured by any false representation, and the plaintiff seeks only to recover his share of the actual proceeds of the sale. What we have said disposes of the defendant's prayers for instruction, and the ruling of the court below, upon the verdict as returned by the jury, and which embraced all the material issues between the parties, was correct.
No error.
Cited: Trust Co. v. Sterchie, 169 N.C. 22.