Matthews, J.
This cause now comes before the court upon the motion of the plaintiff for a new trial. The court at the close of plaintiff’s evidence instructed a verdict for the defendants, and the plaintiff’s motion for a new trial now brings under review the question of the correctness of that ruling.
As the court said upon passing on the defendants’ motion for an instructed verdict, the action of the plaintiff, as alleged in her amended petition, is one upon an implied or quasi contract based upon the theory that the defendants, as executors and executrix of the last will and testament of Charles W. Baker, deceased, have money which in equity and good conscience belongs to the plaintiff, and that the law affords her a remedy against them as though they had agreed to repay it.
The plaintiff’s action, as alleged in her amended petition, is one which under the common law system of pleading would be denominated an action upon the common counts for money had and received. Her claim that the defendants have been unjustly enriched at her expense is based upon two contentions:
First — That she was a client of Charles "W". Baker, attorney, prior to and on the 33st day of - October, 1912, and that on that date she paid him $4,000 to represent her as her attorney in a certain divorce case filed against her by Charles Boldt in the Court of Common Pleas of Hamilton county, Ohio; that she paid said money to the said Baker because of the influence which he had acquired over her by virtue of his having been her attorney in a certain alimony case previously instituted' and prosecuted by her; that said sum of $4,Q00 was exorbitant and excessive, and out of proportion to the services rendered by the said Charles W. Baker in said divorce case, and that because of the rule of law which requires the dealings between attorney and client to be conducted with the utmost good faith on the part of the attorney and to be 'fair and equitable to the client, she is entitled to have returned to her said sum of $4,000, less reasonable compensation for the services rendered by the said Baker in said divorce case, which she fixes at $250, leaving a balance of $3,750 claimed by her.
*147 Seconds — The second ground upon which the plaintiff bases her claim of unjust enrichment is, that at the time she employed Mr. Baker as her attorney in the divorce case on October 31, 1912, it was contemplated by both parties that said divorce case-would be tried to a conclusion upon its merits; that the plaintiff in said divorce case dismissed the same without any collusion with her, and that inasmuch as the said divorce case did not come to a trial because of said dismissal there was a failure on the part of the said Baker to perform all the services that were within the contemplation of the parties at the time the contract was made, and that therefore she is entitled by implication of law to recover the amount she had paid for the services contemplated but not performed, the amount of which she places at $3,750.
The court will discuss these two grounds upon which the plain-faff claims a right of recovery in the order stated.
First.' — -The evidence shows that in 1909 the plaintiff in the case at bar instituted an action for alimony against her husband, Charles Boldt, and employed Charles W. Baker to represent her as attorney in that case. That alimony case was tried in the Court of Insolvency of this county, and after judgment was appealed to the Circuit Court of this county, and while the case was there pending the matters involved therein were adjusted between the parties by a separation contract dated December 12, 1911, and this separation contract was incorporated in the final decree in the Circuit Court, and the court, in conformity to the separation contract, decreed that Charles Boldt, the plaintiff’s husband, should pay alimony to her as follows: $3,500 in cash, out of which she was to pay her attorney’s fees; all the household furniture to belong to plaintiff; the right to occupy the family residence during her natural life; defendant obligated to pay the ground rent and taxes, and in addition thereto the defendant was ordered to pay to the plaintiff during her natural life, the sum of $5,000 per annum payable in monthly installments.
This decree was entered on December 14, 1911. An allowance of $250 on account of attorney’s fee had been ordered paid to *148 Charles W. Baker by the Court of Insolvency, and upon the plaintiff receiving the cash payment of $3,50|0 she paid that to him upon his fee, making a total of $3,750. paid to him for services in her alimony case.
After December 14, 1911, the only evidence which it is claimed shows a continuance of the relation of attorney and client between Charles W. Baker and Mirs. Boldt, is a letter dated August 19, 1912, addressed to Mr. Baker by Charles Boldt, and delivered to Mrs. Boldt, who in turn delivered it to Mr. Baker. The letter is as follows:
“I am pleased to inform you that Mrs. Boldt and I have effected a reconciliation, and that I will continue to pay her an allowance of $5,000 a year under all circumstances. This allowance is for her own personal use, and I am to pay all household expenses. 1 shall transfer to her the leasehold on our home, but will assume the payment of ground rent and taxes. ’ ’
This letter was written at the solicitation of Mrs. Boldt, and so far as the evidence discloses, without any participation therein by Mr. Baker.
The other item of evidence which it is claimed shows a continuance of the relation of attorney and client between Mr. Baker and Mrs. Boldt, is a bill for $1,000 for professional services rendered by Mr. Baker on October 2, 1912, to Mrs. Boldt, and a letter sent at Mr. Baker’s direction on October 11, 1912, requesting her to pay the bill. Mrs. Boldt did not pay this bill for the reason that, as she claimed, there was no basis for the charge,, and it doesn’t appear in evidence what services were rendered by Mr. Baker as the predicate for this charge of $1,000.
From October 11, 1912, to October 31, 1912, the evidence does not disclose any dealings between Mr. Baker and Mrs. Boldt of any sort whatsoever.
The reconciliation that had been effected between Mr. and Mrs. Boldt not having proven satisfactory for some reason, on October 29, 1912, Mr. Boldt instituted an action for divorce against Mrs. Boldt in the Court of Common Pleas of this county, and on October 31, 1912, Mrs. Boldt repaired to Mr. Baker’s. *149 office and then and there employed him to represent her in the defense of said divorce case, and paid him the $4,000 at the inception of that employment, and it is that $4,000 less a reasonable compensation for the services rendered by Mr. Baker on her behalf in that divorce ease, the exact amount to be fixed by the .jury, that she now seeks to recover.
At the outset of the consideration of this phase of the ease, the question is, whether at the time Mrs. Boldt paid to Mr. Baker the $4,000 in question the relation of attorney and client then existed. So far as the evidence discloses, Mr. Baker was employed by Mrs. Boldt with reference to one specific case, and that was the alimony case which Mrs. Boldt instituted in 1909 and which was terminated by final decree of the Circuit Court on December 14, 1911.
Did the entering of the final decree in that case terminate the status of attorney and client? In the ease of Newkirk v. Stevens, 152 N. C., 498, it was held:
“The termination of the relationship of attorney and client depends upon the facts and circumstances, and nature of the attorney’s employment, and the retainer he had received, and as a general rule, and in the absence of special circumstances to the contrary, the authority ceases with the termination of the suit for which his services are engaged.”
There are many authorities cited in the foregoing case in support of the principle of law upon which the court decided the case.
In Thornton on Attorneys at Law, Volume 1, Section 142, the rule of law on this subject is stated in this language:
‘ ‘ The relation of attorney and client is terminated by the accomplishment of the purpose for which it was created, and no act of the attorney can bind his client thereafter. # * * So, where an attorney is employed to contest a will, his employment ceases on the withdrawal of the objections, with his client’s consent, to the entry of a decree admitting the will to probate. The relation is also terminated when the matter in dispute has been settled. * * * When counsel has been retained to conduct litigation his authority to represent his client therein ceases with *150 the termination of such litigation. The question of what amounts to a termination however remains, and as to that the authorities differ. The general rule undoubtedly is that in the absence of an agreement to the contrary, litigation is so far terminated by the entry of a final judgment therein, as to put an end to the authority of counsel with respect thereto.”
In the annotation to the text on page 252, the author says:
“It has been held that in actions for alimony or for divorce and alimony, the authority of the plaintiff’s attorney terminates with the entry of judgment;” citing Calamanowitz v. Calamanowitz, 95 N. Y. Sup., 627; Conklin v. Conklin, 99 N. Y. Sup., 310.
The conclusion to which the court has arrived on this subject is that the evidence discloses that Mr. Baker’s original employment was in connection with the prosecution of the alimony case, and that upon the entering of the final decree in that case on December 14, 1911, the relation of attorney and client terminated.
It is claimed, however, that the letter which Charles Boldt wrote to Mr. Baker on August 19, 1912, at the request of Mrs. Boldt, shows that the relation of attorney and client then existed, or at least that it is an item of evidence from which the jury might infer the existence of. that relation at that time. The court does not take that view of this letter in connection with the evidence.
It appears that this letter was written upon the demand of Mrs. Boldt, and that Mr. Baker had nothing to do with it. She exacted the letter from Mr. Boldt as a condition of reconciliation with him. It was for her individual purposes, and the fact that she secured this expression from Mr. Boldt in the form of a letter to Mr. Baker could not reconstitute Mr. Baker her attorney without some sanction on the part of Mr. Baker. The relation of attorney and client, when once terminated, could only be reestablished by mutual consent of the attorney and client.
It is also claimed that the bill rendered by Mr. Baber on October 2d, and the letter requesting its payment upon October 11th, 1912, are some evidence that the relation of attorney and client existed at that time. The court can readily see that the rendition *151 of that bill for $1,000 is proof that the relation of attorney and client had existed at some prior time, but is unable to perceive that it has any probative force as to the existence of the relation at the time the bill was rendered, or of the continnance of that relation after said bill was rendered, and the court is therefore of the opinion that the evidence fails to disclose that when Mrs. Boldt went to Mr. Baker on October 31st, 1912, that she went to him because of a relationship of attorney and client then existing. There was no proof of any pending unfinished business which had been confided to Mr. Baker that would have required him to continue to act as attorney for Mrs. Boldt between October 11th and October 31st, 1912. The letter of August 19th, the bill of October 2d, and the letter of October 11th, certainly can not be said to be direct evidence even of the existence of the relation on those dates. At most, those items of evidence only give rise to an inference which the jury might or might not draw of the existence of the relation not later than October 19th. To draw that inference and then to draw the further inference that the relation continued to and existed on October 31st, would be building inference upon inference, which the law does not permit.
This well settled principle is stated in Ruling Case Law, Volume 10, page 870, in this language:
“ It is a well-established rule that a presumption can be legally indulged only when the facts from which the presumption arises are proved by direct evidence, and that one presumption can not be deduced from another. To hold that a fact inferred or presumed at once becomes an established fact, for the purpose of serving as a base for a further inference or presumption, would be to spin out the chain of presumption into the region of the barest conjecture.”
Speaking on this subject, the Supreme Court of the United States, in United States v. Ross, 92 U. S., 281, said:
. “They are inferences from inferences; presumptions resting on the basis of another presumption. Such a mode of arriving at a conclusion of fact is generally, if not universally, inadmissi *152 ble. No inference of fact or law is reliable drawn from premises which are uncertain.”
For a discussion of this entire subject see Atchison, Topeka & Santa Fe Ry. Co. v. Baumgarten, 10 Ann. Cases, 1094, and note on 10)97.
If the relation of attorney and client existed between October 11th and October 31st, of necessity there must have been a subject matter to which it related. There was no proof of any matter in connection with which Mr. Baker had been employed, and the court is of the opinion there was no evidence to submit to the jury on this subject.
The court therefore holds on this branch of the case, that on October 31st, 1912, when Mrs. Boldt bargained with Mr. Baker for his employment to' defend her in the divorce case, the parties dealt with one another upon an equal basis, and not upon the basis of a client dealing with the attorney during the relationship, and that the cases cited establishing the law applicable to dealings between attorney and client during the relationship are inapplicable to the facts in this case.
It is claimed, however, that even assuming that the relationship of attorney and client had ceased prior to October 31st, 1912, that the influence of the attorney continued, and that that, under the authorities, makes the law relating to dealings between an attorney and his client applicable to the facts in this case.
In view of the court, not only had the relation of attorney and client ceased prior to October 31st, 1912, but also the influence.
It appeared in evidence that Mrs. Boldt had paid Mr. Baker $3,750 for his services in the alimony case, and that he had rendered a bill for an additional $1,000 for services rendered, and this amount she had 'failed to pay because, in her opinion, it was excessive and exorbitant. The fact of her declination to pay shows that a dispute existed between Mrs. Boldt and Mr. Baker on this subject of fees, and that therefore when she came to Mr. Baker on October 31st, 1912, to employ him, Mr. Baker’s opinion of the value of his professional services was not a controlling factor with her.
*153 Mrs. Boldt and Mr. Baker entered into a written contract for his employment to represent her in the divorce case. This contract is dated October 31, 1912, and is couched in this language:
“Mrs. Amalia M. Boldt has this day employed O. W. Baker as her attorney in the' case of Boldt versus Boldt, No. 151955 Court of Common Pleas.
‘ ‘ She now pays him for the same, and for amount $1,000 heretofore due, $5,000. If the Court in case No. 151,955 makes any allowance for fees such allowances are to be turned over by Mr. Baker to her. Signed, Charles W. Baker. Signed, Amalia M. Boldt.”
It is claimed by the plaintiff in this case that by the language of this contract taken in conjunction with its legal intendments, Mr. Baker was employed not only to prepare the case of Boldt against Boldt for trial, but to actually try the ease, and that inasmuch as the divorce action was dismissed by the plaintiff and no trial took place, there was a service contemplated by the contract but not performed by Mr. Baker, and that therefore, after paying Mr. Baker the reasonable value of his services rendered, Mrs. Boldt is entitled to recover the balance of the $4,000.
The construction which the court places upon this contract is that it bound Mr. Baker to represent Mrs. Boldt in all stages of the case of Boldt v. Boldt, and to perform all the professional services required on her behalf, with reasonable skill and diligence. The language of the contract is that Mrs. Boldt employed Mr. Baker as her attorney in the case, and now pays him for the same. The parties were dealing with reference to a pending action. Can it be said that Mr. Baber’s right to retain this fee depended, under this contract, upon the course that the case took and its ultimate disposition? In the opinion of the court the transaction between the parties does not bear that construction. No one could determine in advance what course the case would take. It was a suit for divorce, and inasmuch as the plaintiff in that case was a man of considerable fortune and inasmuch as this prior separation agreement had bestowed valuable rights on the defendant in that ease, it was extremely likely that property rights would become involved and have to be deter *154 mined. Mrs. Boldt was familiar with the control that parties had over litigation, for the reason that the prior alimony case had been settled by agreement between the parties. While parties to a divorce case can not agree to a divorce decree, still, the plaintiff having instituted the divorce case, has it in his power to dismiss it, and inasmuch as Mrs. Boldt regarded the continuance of the marital relation as a matter of importance to her (and it might well be, both from a property standpoint as well as from a sentimental standpoint), the dismissal of the case by the plaintiff, no matter from what reason, was securing to her all she could hope to get from the divorce ease.
The court is of the opinion that when Mr. Baker represented Mrs. Boldt as her attorney in the case of Boldt v. Boldt, from the time of his employment as long as and until the case was dismissed, he performed all the services called for by the contract. It was inevitable that Boldt v. Boldt should be terminated in some way. A trial on the merits was just one way. Mr. Baker was employed to defend the marital relation existing between Mr. and Mrs. Boldt against the assault made by Mr. Boldt, in the divorce ease. He did defend the marital relation on Mrs. Boldt’s behalf against this assault for a period of more than nine months. Mr. Boldt dismissed his case, the assault ceased, and Mr. Baker’s term of service as Mrs. Boldt’s attorney came to a natural termination by limitation by reason of the completion of the task for which he was employed. It was not a termination of the employment in advance of its natural termination, by the happening of an unforeseen contingency.
In the answer filed by Mr. Baker on behalf of Mrs. Boldt, in the divorce case, among other things he suggested that the plaintiff was not a resident of Ohio. If the court had found upon the evidence that the plaintiff was not a resident" of Ohio for one year next preceding the filing of the petition for divorce, it would on motion of the defendant or'upon its own motion, have dismissed the action for divorce. That would have been a termination of the divorce case other than upon its merits, and would have been a termination suggested by Mrs. Boldt in her answer. Certainly under that situation it could not be claimed that there *155 should be restitution of all or any part of the fee paid, and the court sees no distinction between that situation and the situation disclosed by the evidence in the case that the plaintiff, after prosecuting the divorce case for a period of nine months, determined to and did dismiss the action. Legally the same result ensued. The parties to the case were restored to their original position as though no suit had ever been filed, and the entry of dismissal would not have been a bar to any subsequent action.
Assuming, however, that the court is wrong in its construction of this contract, and that it contemplated a service which was paid for but which was not performed by Mr. Baker, can there be a recovery under the circumstances of this case? The evidence shows, even on this hypothesis, the failure of consideration was only partial. Professional services were rendered, but according to the plaintiff, full performance was not rendered because the plaintiff in the divorce ease dismissed it, and thereby rendered full performance by Mr. Baker impossible. This resulted from no fault of either Mr. Baker or Mrs. Boldt. The rights of the parties under such circumstances are discussed in Keener on Quasi Contracts, page 292, and succeeding pages. We quote from page 292:—
“Accordingly a defendant, who has failed to perform a contract because of the impossibility of performance, must, if the failure of consideration resulting therefrom is total, or if partial only, is apportionalle, compensate the plaintiff for benefits received. ’ ’
Where recovery is permitted it is upon equitable grounds, and if there has been part performance and the consideration is not divisible, recovery is not permitted where inequity would be done to the defendant.
In the ease of Stevens v. Cushing, 1 N. H., 17, the defendant had shipped as a seaman on board a privateer on a cruise to continue not more than 100 nor less than 90 days. He sold the plaintiff one-fourth part of his share in said cruise for the sum of $50 which was paid to him at the time of - sale. The privateer returned to port after cruising about 25 days. The defendant’s *156 share in the prize money amounted to $12, and he left one-fourth of it in the hands of the prize agent for the plaintiff, to whom he had assigned for $50 a one-fourth interest in his share of the prize money. The plaintiff sued to recover the $50 paid as for money had and received. The court held there could be no recovery. .On page 18, the court said:
“Where money is paid upon a contract which is executory on the part of him who has received the money, and he altogether fails of performing the contract, the injured party has an election either to bring an action on the contract to recover damages for the non-performance, or to consider the contract as rescinded, and recover back the money so paid, as money had and received to his use. In such case the law presumes the assent of him who received the money to the dissolution of the contract; and thereupon raises a promise to repay the money so received without consideration. Contracts are considered as rescinded by inference of laiu only when the contract is entire and ivholly unexecuted; if executed in part, the party injured must resort to an action on his contract to recover damages for the non-performance.”
In the case of DeMontague v. Bacharach, 181 Mass., 256, it was held:
“One who has enjoyed for ten months the privilege of conducting a restaurant in connection with the bar room of another under an agreement with the proprietor of the bar room giving him such privilege for two years, if.the proprietor turns him out in violation of the agreement, can not rescind the contract and recover back the payments made under it, because he can not return the benefits he has received. ’ ’
At page 260, the court says:
“The second ground on which the plaintiff seeks to keep his verdict is that on the breach of the contract by the defendants, he was entitled to rescind the contract, and recover from the defendants what he paid under it. But, as was said in Handforth v. Jackson, 150 Mass., 149, 154, in ease a plaintiff wishes to rescind the defendant is ‘entitled to have his property restored to him, not to have its value fixed by a jury, ’ and it is settled that a *157 plaintiff cannot rescind a contract ón the defendant committing a breach of it, without putting the defendant in statu, quo.”
The plaintiff’s action is based upon equitable grounds. The remedy would only be accorded to her in the event it could be done without injustice to the defendants, and even assuming a partial failure of consideration based on the impossibility of performance, to accord to the plaintiff this remedy for restitution, and require the defendants to prove or attempt to prove the reasonable value of the services rendered by Mr. Baker, or their value as compared with the total services for which he was to be paid, $4,000, would be an injustice, and a result which it was intended to avoid by the entering into this written agreement and the requirement of payment in advance. It seems to the court it would be particularly inequitable in this case, where the plaintiff delayed three years and until after Mr. Baker’s death before making any demand for restitution.
In conclusion, the court considers that this is a case where a litigant went to an attorney to employ him to represent her in a divorce ease; that no confidential relation existed between them at the time, and that the attorney had a right to place his own standard of value upon his services; that the rule of law in Carlton v. Dustin, 10 Weekly Law Bulletin, 294 at 296, applies, and that rule is:
“The rule of law is that where the relations of attorney and client do not exist, where there has been no such employment, where the parties deal at arm’s length and neither requires the protection of the court, they may make such contract as they see fit. A man may put his own estimate upon the value of his services. He may say he will not be employed as an attorney or in any other capacity except upon the terms he sees fit.”
The court is of the opinion that in view of the fact that Mrs. Boldt paid Mr. Baker $3,750 for his services in the alimony case, and had received a bill for $1,000 additional, Mrs. Boldt knew of the estimate which Mr. Baker placed upon his services at the time she went to him, and must have contemplated paying him a fee conforming to the prior estimate, that the requirement of the payment of the fee in advance, no matter for what reason, *158 was entirely lawful and may have been caused by the fact that while Mrs. Boldt had property in the form of an alimony allowance, bonds, and a life estate in some real estate, still it was not of such a character as to be easily reached on execution, and also because Mr. Baker knew that she had agreed in the alimony case not to ask for any attorney’s fees in future cases, and that this decree in the alimony ease on that and other subjects might be held to be valid. That the services rendered were less than might have been required of Mr. Baker had the case taken another turn is not ground for giving the plaintiff relief in this action. Moss v. Ritchie, 50 Mo. App., 75; Pennington v. Nave, 15 Ind., 323.
Entertaining the views heretofore expressed, it follows that the court is of the opinion that the motion for a new trial should be overruled, and it is so ordered.